UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Duncan M. deBruin,            Case No.: 20-48962
                                                      Chapter 7
      Debtor.                       Hon. Mark A. Randon
_____/

Kenneth Nathan,

     Plaintiff,

v.                                                     Adversary Proceeding
                                                      Case No.: 21-04156

Meagan deBruin,
Jennifer Ellis, and
Duncan M. deBruin

     Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.    INTRODUCTION**

    The deBruins were in no position to finance the purchase of a suburban-Detroit family home in 2014: Duncan deBruin's credit rating and debt-to-income ratio were very poor; Meagan deBruin's income was insufficient to obtain financing. So, after the couple's joint home loan application was rejected, Megan turned to her mother, Jennifer Ellis, for help.

    With Jennifer's $30,000.00 down-payment gift to Meagan, and her agreement to co-sign the note and mortgage in Duncan's place, financing was approved. Jennifer and

Meagan were listed on the deed as joint tenants with rights of survivorship. Duncan was not, and has never been, included on the deed. Meagan and Duncan have lived in the home with their two children.[1] They have generally shared household expenses, including the mortgage payments.

On August 20, 2020, Duncan filed Chapter 7 bankruptcy. The Trustee filed this adversary proceeding against Duncan, Meagan, and Jennifer. He asks the Court to first impose a constructive trust on half of the home's approximately $140,000.00 equity in favor of Duncan (Count I). Once the trust is imposed, the Trustee requests that Duncan's interest in the home become property of the bankruptcy estate for administration (Count II). Finally, the Trustee requests permission to sell the home and distribute one-half of the proceeds to Meagan (Count III).[2]

Meagan and Jennifer seek summary judgment on Count I of the complaint.[3] Because: (1) Duncan's poor credit rating and debt-to-income ratio disqualified him from buying the home or, presumably, even being involved in the application process; (2) Duncan has benefitted from his mortgage payment contributions, which have provided a stable home for him and his children; and (3) the vast majority of the home's equity

---

[1]Jennifer has never lived in the home.

[2]The Trustee implicitly seeks to eliminate any interest Jennifer has in the home.

[3]On February 17, 2022, the Trustee filed a motion for summary judgment against Meagan and Jennifer on Counts I and III. Based on this opinion, the Trustee's motion is moot.

derives from property appreciation–not payments applied to the loan–neither Meagan nor Jennifer have been *unjustly* enriched at Duncan's expense. A constructive trust is, therefore, not appropriate. The Court **GRANTS** Defendants' motion for partial summary judgment and **DISMISSES** the adversary proceeding.[4]

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pittman v. Cuyahoga County Dep't of Children Services*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The Court must draw all reasonable inferences in favor of the party opposing the motion. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011). However, "[t]he nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; [she] must go beyond the pleadings and support [her] contentions

---

[4]The case against Duncan is also dismissed even though he did not join in the motion for partial summary judgment.

with proper documentary evidence." *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). To support their respective positions, each party must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Poss v. Morris (In re Morris)*, 260 F.3d 654, 665 (6th Cir. 2001) ("the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact").

## III. BACKGROUND

### A. *Purchase of the Canton Home*

Duncan met Meagan in 2008. He was a full-time college student; she was a teacher. They began living together in October 2009 and were married in 2010. Duncan and Meagan lived in Meagan's home until 2014 when they began looking for a bigger home to accommodate their growing family. The deBruins applied for financing to buy a home in Canton, Michigan but were denied based on Duncan's poor credit and debt-to-income ratio: Duncan had substantial credit card and student loan debt.[5] Meagan did not have sufficient income to obtain a mortgage alone. Meagan's mother, Jennifer Ellis,

---

[5] Duncan lists over $400,000.00 in student loan debt on his bankruptcy schedules.

agreed to help. She co-signed for the loan with Meagan and provided the $30,000.00 down payment using funds borrowed from her IRA. The Trustee argues that the $30,000.00 was a gift to both Duncan and Meagan, but the record-evidence shows otherwise. In response to the Trustee's questioning, Meagan testified:

> Q. Okay. And that down payment was around – and I'm using rough numbers, but it was around $31,000?
>
> A. Yes.
>
> Q. What was the source of the money used for that down payment?
>
> A. My mom gifted it to me.[6]

In her response to the Trustee's First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents, Jennifer indicated that she "provided Meagan deBruin with the [$30,000.00] gift."[7]

Meagan and Jennifer closed on the Canton home on September 23, 2014. The purchase price was $219,000.00. Of that, $192,307.00 was financed over 30 years at a 4.25% interest rate.

**B.    *Payment of Household Expenses***

---

[6]2004 Examination of Meagan deBruin (Dkt. No. 30, Ex. 5, page 10).

[7]Dkt. No. 34, page 1.

21-04156-mar    Doc 55    Filed 03/18/22    Entered 03/18/22 09:50:37    Page 5 of 11

Both Meagan and Duncan's paychecks are automatically deposited into their joint Comerica bank account and used to pay the household expenses.[8] Duncan's net income is approximately $1,200.00 biweekly; Meagan's is $1,648.00.[9] Unlike Meagan, Duncan's income is insufficient to cover the entire $1,586.00 mortgage payment on its due date.

When Meagan and Duncan experienced financial difficulties in 2020, Jennifer provided additional assistance. In February 2020, she provided $20,000.00, which Meagan deposited into the Comerica bank account.[10] Six months later, she provided another $10,000.00, which was also deposited into the Comerica account.

### C. Duncan's Chapter 7 Bankruptcy

Duncan filed Chapter 7 bankruptcy on August 20, 2020. The petition-date balance on the home loan was approximately $170,961.00.[11] Assuming Duncan made half of every monthly mortgage payment, he contributed only $10,673.00 to the home's petition-date equity. Nevertheless, on January 28, 2021, the Trustee sent Meagan and Jennifer a letter demanding payment of $70,000.00, because the home's value had appreciated to

---

[8]Jennifer's name is also on the account, but she does not make any deposits or withdrawals.

[9]Duncan has $450.00 per month deducted from his income for the support of his 15-year-old child from another relationship.

[10]Meagan indicated in her Responses to Plaintiff's First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents that she intended to pay this money back (Dkt. No. 33, page 4).

[11]The Court referenced a 30-year amortization schedule at 4.25% interest.

between $300,000.00 and $315,000.00 (with $140,000.00 of equity). The Trustee argues that $70,000.00 fairly reflects Duncan's one-half equitable interest in the home from his contributions to the household expenses and mortgage payments. He filed this adversary proceeding after the demanded payment was not received.

IV. APPLICABLE LAW AND ANALYSIS

In Michigan, a constructive trust may be imposed when property "has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property." *Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch.*, 504 N.W.2d 635, 641 (Mich. 1993) (citations omitted). Fraud is not required in order to impose a constructive trust: "a constructive trust may be imposed to prevent unjust enrichment." *Miller v. Short (In re Short)*, 625 B.R. 678, 686 (Bankr. E.D. Mich. 2021); *see also Kammer Asphalt*, 504 N.W.2d at 641 ("A constructive trust may be imposed 'where such trust is necessary to do equity or to prevent unjust enrichment'") (quotation omitted). "Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *McCreary v. Shields*, 52 N.W.2d 853, 855 (Mich. 1952) (quotations and citation omitted). Unjust enrichment must be applied with caution "because the mere fact that a benefit has been conveyed does not necessarily indicate that it is unjust for a

party to retain that benefit." *Kammer Asphalt*, 504 N.W.2d at 646 (Cavanagh, J., concurring in part).

The Trustee has the burden of proof. *Id.* at 641. He must prove two elements: (1) the receipt of a benefit by the defendant [Meagan and Jennifer] from the plaintiff [Duncan]; and (2) an inequity resulting to the plaintiff [Duncan] because of the retention of the benefit by the defendant [Meagan and Jennifer]." *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991) (citation omitted).[12]

There is nothing inequitable about Jennifer's entitlement to one-half of the equity–derived mostly from property appreciation–in the Canton home as a legal co-owner; she is not unjustly enriched at Duncan's expense. But for her willingness to use her credit to obtain the home; her consent to be co-obligated on the mortgage debt; and her gratuitous contributions, Meagan, Duncan, and their two children would not enjoy the stability of living in the Canton home.[13] "[T]he mere fact that a benefit has been conveyed does not necessarily indicate that it is unjust for the party to retain that benefit." *Delta Airlines, Inc. v. Spirit Airlines, Inc.*, No. 224410, 2004 WL 67685, at *3 (Mich. Ct. App. Jan. 15, 2004); *see also Ooley v. Collins*, 73 N.W.2d 464, 469 (Mich. 1955) ("[S]uch constructive trust will not be imposed upon property owned by parties who have

---

[12]The Trustee argues in his response that Defendants' motion should be denied as premature because discovery is not complete; however, he abandoned this argument at the hearing held on January 24, 2022.

[13]Only Jennifer and Meagan as co-obligors assume the risk of any future loss in value of the home.

-8-

in no way contributed to the reasons for imposing a constructive trust."). This is particularly true here. Of the $140,000.00 in equity, approximately $118,500.00 derives from property appreciation, which would never have been realized without Jennifer's good credit; willingness to be co-obligated on the debt; and the $30,000.00 gift to Meagan, used for the down payment. As an equitable remedy, the creation of a constructive trust is, therefore, not appropriate.

Meagan and Duncan are more similarly situated. But, they differ in two important respects. First, it was Meagan, through the gift from her mother, who provided the $30,000.00 down payment to purchase the home. Duncan made no down payment contribution. Second, if the mortgage payments are not made, Duncan has no liability while Meagan is jointly responsible for the debt. Given these distinctions, the fact that Duncan made contributions to the household and mortgage payments for a home–he could never have qualified to purchase–does not make a constructive trust appropriate. Duncan's expenditures "were not out of proportion to the use of the premises." *Cerling v. Hedstrom*, 214 N.W.2d 904, 906 (Mich. Ct. App. 1974) (affirming the trial court's finding that "mere" expenditure of "relatively small sums of money" was insufficient to impose a constructive trust); *see also Pakulski v. Ludwiczewski*, 289 N.W. 231, 253 (Mich. 1939):

> [t]he extent of the enrichment of the owner has not been shown. [P]laintiffs no doubt have made some improvements to the property but they have not shown that they exceeded the value which they derived from the land for

more than nine years, during which they also occupied the house without payment of any rent.

Assuming, as the Trustee urges, Duncan essentially paid half of each mortgage payment, his $793.00 monthly contributions have provided a stable home in a well-regarded school district for him and his children, and at best accounts for less than $11,000.00 of the home's petition-date equity.[14] In addition, there is no evidence that Meagan withdrew money from the Comerica account and used it to pay anything other than the household expenses. *See Frank v. Patton*, 232 N.W. 211, 211-212 (Mich. 1930) (declining to impose a constructive trust absent a showing that plaintiff's wife wrongfully withdrew money from their business). Meagan is not unjustly enriched at Duncan's expense.[15]

## V. CONCLUSION

Because neither Meagan nor Jennifer are unjustly enriched at Duncan's expense, a constructive trust is not appropriate. Defendants' motion for partial summary judgment is **GRANTED**; the adversary proceeding is **DISMISSED**.[16]

---

[14]Reference to an amortization schedule shows Duncan's contribution to equity as of March 2022 is $14,013.00. This amount is still less than Meagan's $30,000.00 down payment contribution (gifted from her mother) and her contribution of half of all monthly mortgage payments. *See also* footnote 13, *supra*.

[15]The Court agrees with Defendants that the case cited by the Trustee is inapplicable. In *Roberts v. Dunnem (In re Estate of Spack)*, No. 309967, 2013 WL 2662398 (Mich. Ct. App. June 13, 2013), the court discussed imposing a constructive trust in the context of an individual's intention regarding the division of property amongst her children after she died.

[16]The Court need not address Defendants' unclean hands defense because there is no evidence that Duncan fraudulently titled the Canton home in Meagan and Jennifer's

**IT IS ORDERED**.

**Signed on March 18, 2022**



/s/ Mark A. Randon

**Mark A. Randon**
**United States Bankruptcy Judge**

---

name to protect it from his creditors.

-11-